# EXHIBIT "B"

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY**

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

ATTORNEYS AT LAW

DAVID D. AUGHTRY
SHAREHOLDER
DIRECT DIAL NO. 404.658.5486
E-MAIL: david.aughtry@chamberlainlaw.com

191 PEACHTREE STREET, N.E. - FORTY-SIXTH FLOOR
ATLANTA, GEORGIA 30303
(404) 659-1410 (800) 800-0745
FAX (404) 659-1852

HOUSTON
ATLANTA
PHILADELPHIA
SAN ANTONIO

May 14, 2021

*VIA OVERNIGHT DELIVERY*
Charles P. Rettig, Esq.
IRS Commissioner
1111 Constitution Avenue, NW
Washington, DC 20224

Re: Agent Jennifer Miller (West Palm Beach, Florida: ID [redacted])
Pattern of Attorney-Client Violations Destroying Client Relationships

Dear Chuck:

I hope all is well with you and apologize for writing you but the agent's conduct already caused one large client to fire the taxpayer and refuse to pay the outstanding payables, the threat of further damage today is urgent, and the representative to date has been unable to stop the bleeding. Would you please ask someone to intervene before more attorney-client relations are destroyed by the most extreme agent conduct I have seen since I briefed similar conduct in *J. Kenneth Jones v. Commissioner*, 97 T.C. 7 (1991)? We have been asked to do what we can to save the taxpayer's practice. I am attaching the copies of powers of attorney signed earlier today.

By way of background, the taxpayer (David Feingold) went to Emory Law School with a friend of mine and practices in Palm Beach Gardens, Florida. Agent Miller selected David and his firm for audit with respect to Forms 1040 and 1120 for 2018 and 2019. In addition to the firm's financial records, the agent demanded all client files and emails. Through his representative, David produced all requested unprivileged documents as well as the redacted client communications. David also provided the agent the revenue ruling cite that governs the tax treatment.

The agent threatened to contact all the clients, but the representative specifically told the agent that the IRS contact would damage David's relationship with the clients. The agent agreed not to contact David's clients without first telling the representative. My understanding is that the document production covers all relevant information that could be obtained from David's clients.

The agent then surreptitiously sent all the clients form letters demanding all of their communications and documents with David's firm. That created the foreseeable uproar, but the agent did not stop there. Some of the clients responded to the agent's letter through separate counsel who insisted that all contacts be directed through them. The agent deliberately circumvented those attorney-client relationships through arrogance and artifice. She gratuitously disclosed return information to receptionists and others. Through aggressive, angry phone calls, she called the clients, directly insisting at times that she did not need to go through their separate counsel, at other times calling the lawyer's office when he was in court and using that as an excuse for calling the client directly. She left messages on at least one client's recorder threatening to call the client every day and refusing to go through his lawyer. Worse, she did exactly what Judge Colvin found to be "reprehensible" in *Jones*: she said that the POA for one client had some unidentified defect and so she was going to deal directly with the client from now on.

A very large client just fired David and refuses to pay for David's services. Virtually all the clients are unhappy about the angry threats and messages (including at least one recorded message refusing to honor the contact instructions from that client's lawyers). David expects to lose other clients, especially if the agent's conduct continues.

Various lawyers wrote and complained about the conduct as improper, with some saying that the conduct was unconstitutional (essentially, a Sixth Amendment violation). Still matters grew worse. David and his former wife have three special-needs children who have huge medical and related needs which David pays. The agent insisted on interviewing David's ex-wife who is an adoptions lawyer. The agent demanded the ex-wife's client files and, when the ex-wife responded that state law prohibited her from disclosing adoption information, the agent retaliated by subjecting the ex-wife to an audit laced with angry, unprofessional threats and demands.

David has no interest in becoming embroiled in litigation but the agent should know that her conduct tarnishes the image of the Service and her Sixth Amendment violations give rise to liability under 42 U.S.C. § 1983 and *Bivens*, while her unnecessary third-party disclosures of the return information for David and his firm violates 26 U.S.C. § 6103(k)(6) with its associated sanctions. David simply wants to accurately resolve his examination in a pleasant, professional manner that does not further damage his client relations. Historically, deliberate circumvention of the attorney-client relationship was a firing offense but we only ask that a professional, pleasant agent who reflects well on the Service be assigned to this matter in lieu of Ms. Miller who now has a conflict due to the personal liability she created.

Could someone please confirm for me that this problem is being addressed before the agent does greater damage? Thank you.

Sincerely,

David D. Aughtry

DDA:
cc: Revenue Agent Jennifer Miller (*via email: Jennifer.h.miller@irs.gov*)
Group Manager Marian Kenney (*via fax: (877) 658-6218*)